IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

SCOTTSDALE INSURANCE COMPANY,

        Plaintiff,

    v.                                      Case No.

CONSUMER LAW PROTECTION, LLC,
**HOLD SERVICE**

    and

CONSUMER RIGHTS COUNSEL,
**HOLD SERVICE**

    and

PREMIER RESERVATIONS GROUP, LLC
**HOLD SERVICE**

    and

RESORT TRANSFER GROUP, LLC
**HOLD SERVICE**

    and

SQUARE ONE DEVELOPMENT GROUP, INC.,
**HOLD SERVICE**

    and

SQUARE ONE GROUP, LLC
**HOLD SERVICE**

    and

TIMESHARE HELP SOURCE, LLC,
**HOLD SERVICE**

    and,

FARMINGTON ALLEGIANCE, LLC,
**HOLD SERVICE**

 and

MAINLINE PARTNERS, LLC
**HOLD SERVICE**

 and

WHISKEY DIX BIG TRUCK REPAIR LLC
**HOLD SERVICE**

 and

SQUARE ONE TRANSPORT, LLC
**HOLD SERVICE**

 and

SQUARE ONE LOGISTICS LLC
**HOLD SERVICE**

 and

CHRISTOPHER CARROLL
**HOLD SERVICE**

 and

SCOTT JACKSON,
**HOLD SERVICE**

 and

GEORGE REED,
**HOLD SERVICE**

 and

LOUANN REED,
**HOLD SERVICE**

 and

#30499308 v1

EDUARDO BALDERAS
**HOLD SERVICE**

    and

SHERROD BANKS
**HOLD SERVICE**

    and

COURTNEY KIRKPATRICK
**HOLD SERVICE**

    and

GARY ADAMSON
**HOLD SERVICE**

    Defendants.

## **COMPLAINT**

For its Complaint against Defendants Consumer Law Protection, LLC ("Consumer Law"), Consumer Rights Counsel ("Consumer Rights"), Premier Reservations Group, LLC ("Premier Reservations"), Resort Transfer Group, LLC ("Resort Transfer"), Square One Development Group, LLC ("Square One Development"), Square One Group, LLC ("Square One Group"), Timeshare Help Source, LLC ("Timeshare Help"), Farmington Allegiance, LLC ("Farmington"), Mainline Partners, LLC ("Mainline"), Whiskey Dix Big Truck Repair, LLC ("Whiskey Dix"), Square One Transport, LLC ("Square One Transport"), Square One Logistics LLC ("Square One Logistics"), Christopher Carroll, Scott Jackson, George Reed, LouAnn Reed, Eduardo Balderas, Sherrod Banks, Courtney Kirkpatrick, and Gary Adamson (collectively, the "Defendants"), Scottsdale Insurance Company ("Scottsdale") alleges as follows:

## NATURE OF THE CASE

1. This is an insurance coverage dispute arising out of an insurance policy (the "Policy") issued by Scottsdale to Mainline. Subject to its terms, conditions, exclusions, and

#30499308 v1

endorsements, the Policy provides coverage for certain claims first made against Mainline or other "Insureds" during its "Policy Period," January 5, 2022 to January 5, 2023.

2. In 2022, Defendants were sued in three lawsuits (collectively, the "Underlying Lawsuits") filed by (i) the State of Missouri, (ii) the State of Alaska, and (iii) the United States of America and State of Wisconsin. The Underlying Lawsuits generally allege that Defendants operated a fraudulent timeshare termination scheme, convincing timeshare owners to pay money in exchange for services that would relieve them of their timeshare interests and obligations. Those services allegedly were never provided and Defendants refused to refund the owners' paid fees, contrary to their promise to do so.

3. Defendants submitted the Underlying Lawsuits to Scottsdale for coverage under the Policy.

4. Scottsdale denied the requested coverage. For one, the Policy's "Regulatory Agency Exclusion" bars coverage for lawsuits brought or maintained by, on behalf of, in the right of, or at the direction of any Regulatory Agency—i.e., federal, state, or municipal agency, or the office of any state or federal Attorney General. The Underlying Lawsuits are such lawsuits. Second, the Policy's "Professional Services Exclusion" generally excludes coverage for lawsuits based upon or arising out of an Insured's rendering or failure to render professional services—such as Defendants' timeshare termination services. Finally, as to coverage for the loss of Mainline and any Subsidiaries and/or Parent Companies (as defined in the Complaint), the Policy's "Contract Exclusion" applies because the Underlying Lawsuits are claims arising out of breach of contract.

5. By this lawsuit, Scottsdale seeks a declaration that the Policy does not afford any coverage to Defendants for defense or indemnity of the Underlying Lawsuits.

#30499308 v1

## PARTIES

6. Scottsdale is an Ohio corporation with its principal place of business in Scottsdale, Arizona.

7. Upon information and belief, Consumer Law is a Missouri limited liability company. Upon information and belief, Consumer Law's members are citizens of Missouri and not citizens of Ohio or Arizona.

8. Upon information and belief, Consumer Rights is a Missouri non-profit corporation with its principal place of business in Pevely, Missouri.

9. Upon information and belief, Premier Reservations is a Missouri limited liability company. Upon information and belief, Premier Reservations' members are citizens of Missouri and not citizens of Ohio or Arizona.

10. Upon information and belief, Resort Transfer is a Missouri limited liability company. Upon information and belief, Resort Transfer's members are citizens of Missouri and not citizens of Ohio or Arizona.

11. Upon information and belief, Square One Development is a Missouri corporation with its principal place of business in Jefferson County, Missouri.

12. Upon information and belief, Square One Group is a Missouri limited liability company. Upon information and belief, Square One Group's members are citizens of Missouri and not citizens of Ohio or Arizona.

13. Upon information and belief, Timeshare Help is a Colorado limited liability company. Upon information and belief, Timeshare Help's members are citizens of Missouri and not citizens of Ohio or Arizona.

14. Upon information and belief, Farmington is a Missouri limited liability company. Upon information and belief, Farmington's members are citizens of Missouri and not citizens of Ohio or Arizona.

15. Upon information and belief, Mainline is a Missouri limited liability company. Upon information and belief, Mainline's members are citizens of Missouri and not citizens of Ohio or Arizona.

16. Upon information and belief, Whiskey Dix is a Missouri limited liability company. Upon information and belief, Whiskey Dix's members are citizens of Missouri and not citizens of Ohio or Arizona.

17. Upon information and belief, Square One Transport is a Missouri limited liability company. Upon information and belief, Square One Transport's members are citizens of Missouri and not citizens of Ohio or Arizona.

18. Upon information and belief, Square One Logistics is a Missouri limited liability company. Upon information and belief, Square One Logistics' members are citizens of Missouri and not citizens of Ohio or Arizona.

19. Upon information and belief, Christopher Carroll is an individual and citizen of Missouri.

20. Upon information and belief, Scott Jackson is an individual and citizen of Missouri.

21. Upon information and belief, George Reed is an individual and citizen of Missouri.

22. Upon information and belief, LouAnn Reed is an individual and citizen of Missouri.

23. Upon information and belief, Eduardo Balderas is an individual and citizen of Missouri.

24. Upon information and belief, Sherrod Banks is an individual and citizen of Missouri.

25. Upon information and belief, Courtney Kilpatrick is an individual and citizen of Missouri.

26. Upon information and belief, Gary Adamson is an individual and citizen of Missouri.

JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Scottsdale and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

28. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

FACTUAL ALLEGATIONS

*The Policy*

29. Scottsdale issued the Policy—Business and Management Indemnity Policy, No. EKS3412841—to Mainline for the "Policy Period" of January 5, 2022 to January 5, 2023. A true and accurate copy of the Policy is attached hereto as Exhibit 1.

30. The Policy is a "claims-made-and-reported policy" that includes a coverage section labeled as the "Directors and Officers and Company Coverage Section" ("D&O Coverage Section").

31. The D&O Coverage Section includes three insuring clauses.

32. Insuring Clause Section A.1. of the D&O Coverage Section provides:

The **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company** and which the

**Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

(Policy, D&O Coverage Section, § A.1.) (bold original).

33. Insuring Clause Section A.2. of the D&O Coverage Section provides:

The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Directors and Officers** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

(Policy, D&O Coverage Section, § A.2.) (bold original).

34. Insuring Clause Section A.3. of the D&O Coverage Section provides:

The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the **Company** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

(Policy, D&O Coverage Section, § A.3.) (bold original).

35. The D&O Coverage Section defines "Insureds" to include the "Company" and the "Directors and Officers." (Policy, D&O Coverage Section, § B.5.).

36. "Directors and Officers" includes (a) "a duly elected or appointed director, officer, or similar executive of the **Company**, or any member of the management board of the **Company**;" (b) "a full-time or part-time employee of the **Company**;" (c) "the functional equivalent of directors or officers of a **Company** incorporated or domiciled outside the United States of America;" (d) any natural person who is a leased employee or is contracted to perform work for the **Company**, or is an independent contractor for the **Company**, but only to the extent such individual performs work or services for or on behalf of the **Company**;" (e) "**Employed Lawyers** of the **Company**;" and (f) "a natural person member of the Scientific or Advisory Board of the **Company** that is

#30499308 v1

indemnified by the **Company** pursuant to a written indemnification agreement[.]" (Policy, D&O Coverage Section, § B.4., as amended by End. Nos. 19, 26, and 35) (bold original).

37. The "Company" is defined as the "Parent Company"—which includes Mainline, Square One Logistics, Square One Transport, and Whiskey Dix—and any "Subsidiary." (Policy, General Terms and Conditions, § B.2. & B.7.).

38. "Subsidiary" means:

   a. any entity of which more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors or managers are owned by the **Parent Company**, directly or indirectly, if such entity:

      i. was so owned on or prior to the inception date of this **Policy**; or

      ii. becomes so owned after the inception date of this **Policy**; and

   b. any joint venture entity in which the **Parent Company**, or an entity described in a. above, has an exact fifty percent (50%) ownership of the interests of such joint venture entity and where, pursuant to a written joint venture agreement, the **Parent Company** or entity described in a. above solely controls the management and operations of such joint venture entity.

(Policy, General Terms and Conditions, § B.11.) (bold original).

39. The D&O Coverage Section further includes a "Regulatory Agency Exclusion," applicable to all Insuring Clauses, which provides:

   **Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim** brought or maintained by, on behalf of, in the right of, or at the direction of any **Regulatory Agency**, whether in the right of such **Regulatory Agency** on behalf of an individual or entity, or by an individual or entity on behalf of such **Regulatory Agency**.

(Policy, D&O Coverage Section, § C., as amended by End. No. 33) (bold original).

40. "Regulatory Agency" means:

   any federal, state or municipal agency, or other governmental or quasigovernmental authority, or the office of any state or federal Attorney General, including, but not limited to the U.S. Department of Justice or any other governmental department;

#30499308 v1

provided, however, **Regulatory Agency** shall not include the U.S. Securities and Exchange Commission or any similar state or local agency or division.

(Policy, D&O Coverage Section, § B., as amended by End. No. 33) (bold original).

41. The D&O Coverage Section further includes a "Professional Services Exclusion," applicable to all Insuring Clauses, which provides:

> **Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failing to render professional services, provided, however, this exclusion shall not apply to any **Claim(s)** brought by a securities holder of the **Company** in their capacity as such.

(Policy, D&O Coverage Section, § C.1., as amended by End. No. 32) (bold original).

42. The D&O Coverage Section also includes a "Contract Exclusion," applicable to Insuring Clause A.3., which provides:

> **Insurer** shall not be liable for **Loss** on account of any **Claim**: … alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the actual or alleged breach of any contract or agreement; except and to the extent the **Company** would have been liable in the absence of such contract or agreement[.]

(Policy, D&O Coverage Section, § C.2.a.) (bold original).

*The Underlying Lawsuits*

43. On August 19, 2022, Defendants were sued in the Underlying Lawsuits, which include the following:

- *State of Missouri, ex rel. Andrew Bailey, Attorney General v. Consumer Law Protection, LLC, et al.*, No. 22JE-CC00501, Circuit Court of Jefferson County, Missouri (the "Missouri Action");

- *State of Alaska v. Consumer Law Protection, LLC, et al.*, No. 3AN-22-6806-CI, Superior Court, Third Judicial District at Anchorage, Alaska (the "Alaska Action"); and

- *U.S., et al. v. Consumer Law Protection, LLC, et al.*, No. 4:22-cv-1243, U.S.D.C. for the Eastern District of Missouri (the "Federal Action").

#30499308 v1

True and accurate copies of the operative complaints in the Underlying Lawsuits (collectively, the Underlying Complaints) are attached hereto as Exhibits 2, 3, and 4, respectively.

44. The Underlying Complaints allege that the Defendants operated a fraudulent timeshare termination scheme using solicitations to lure consumers to high-pressure sales presentations. The Defendants then allegedly made a series of misrepresentations about (i) their credentials, (ii) the nature of timeshare fees, (iii) the scope of their services, (iv) their success rate, and (v) a money-back guarantee, among other things. The alleged scheme allegedly resulted in over $90 million in funds paid to Defendants by consumers.

45. As part of the alleged scheme, Defendants entered into contracts with consumers (the "Agreements"), which detailed the supposed terms of Defendants' services, including the money-back guarantee should the consumers be dissatisfied with Defendants' services.

46. The Underlying Lawsuits assert causes of action against Defendants as follows:

- Missouri Action: (i) false promises, (ii) misrepresentation, (iii) concealment, suppression, or omission, (iv) deception, (v) various unfair practices, and (vi) fraudulent transfer.

- Alaska Action: violation of the Unfair Trade Practices Act.

- Federal Action: (i) misrepresentations, (ii) unfair pattern of business practices, (iii) violation of the Cooling-Off Rule, (iv) misrepresentations, (v) failure to comply with Three-Day Right to Cancel Law, (vi) failure to make opening disclosures in mail solicitations, and (vii) fraudulent misrepresentations.

*The Coverage Dispute*

47. Certain Defendants submitted the Underlying Lawsuits to Scottsdale for coverage under the Policy.

48. By letters dated March 28, 2023, March 29, 2023, and April 5, 2023, Scottsdale denied coverage for the Underlying Lawsuits under all Insuring Clauses based upon the Regulatory Agency Exclusion and Professional Services Exclusion and, as to coverage under Insuring Clause

A.3., the Contract Exclusion. Scottsdale otherwise fully reserved its rights under the Policy and applicable law—including without limitation its right to deny coverage because certain Defendants do not qualify as Insureds under the Policy. A true and accurate copy of Scottsdale's denial letters is attached hereto as Exhibits 5, 6, and 7.

49.     Upon information and belief, Defendants dispute Scottsdale's coverage denial.

50.     Scottsdale now seeks a declaratory judgment as to application of the Regulatory Agency Exclusion, Professional Services Exclusion, and Contract Exclusion.

COUNT I: DECLARATORY JUDGMENT AS TO APPLICATION<br>OF THE REGULATORY AGENCY EXCLUSION

51.     Scottsdale repeats and realleges the allegations contained in paragraphs 1-52 as if fully set forth herein.

52.     The Underlying Lawsuits were brought against the Defendants by the States of Missouri, Alaska, and Wisconsin, and the United States.

53.     The States of Missouri, Alaska, and Wisconsin, and the United States, constitute Regulatory Agencies under the Policy.

54.     Accordingly, the Underlying Lawsuits are Claims "brought or maintained by, on behalf of, in the right of, or at the direction of any **Regulatory Agency**, whether in the right of such **Regulatory Agency** on behalf of an individual or entity, or by an individual or entity on behalf of such **Regulatory Agency**." (Policy, D&O Coverage Section, § C., as amended by End. No. 33) (bold original).

55.     The Regulatory Agency Exclusion bars coverage for the Underlying Lawsuits.

56.     An actual, present, and justiciable controversy exists concerning coverage for Underlying Lawsuits.

57. The entry of a declaratory judgment with respect to coverage regarding the Underlying Lawsuits, particularly as to application of the Policy's Regulatory Agency Exclusion, is necessary and would be effective to resolve the controversy between the parties.

58. Accordingly, Scottsdale respectfully requests that the Court enter judgment declaring that no coverage is available to Defendants under the Policy for the Underlying Lawsuits.

### COUNT II: DECLARATORY JUDGMENT AS TO APPLICATION OF THE PROFESSIONAL SERVICES EXCLUSION

59. Scottsdale repeats and realleges the allegations contained in paragraphs 1-60 as if fully set forth herein.

60. The Underlying Lawsuits were brought against the Defendants for their conduct in rendering and/or failing to render legal timeshare termination services.

61. The legal timeshare termination services at issue in the Underlying Lawsuits constitute professional services for purposes of the Professional Services Exclusion.

62. Accordingly, the Underlying Lawsuits are Claims alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failing to render professional services, and the Professional Services Exclusion bars coverage therefor.

63. An actual, present, and justiciable controversy exists concerning coverage for Underlying Lawsuits.

64. The entry of a declaratory judgment with respect to coverage regarding the Underlying Lawsuits, particularly as to application of the Policy's Professional Service Exclusion, is necessary and would be effective to resolve the controversy between the parties.

65. Accordingly, Scottsdale respectfully requests that the Court enter judgment declaring that no coverage is available to Defendants under the Policy for the Underlying Lawsuits.

#30499308 v1

## COUNT III: DECLARATORY JUDGMENT AS TO APPLICATION OF THE CONTRACT EXCLUSION

66. Scottsdale repeats and realleges the allegations contained in paragraphs 1-67 as if fully set forth herein.

67. The Underlying Lawsuits allege that Defendants breached the Agreements.

68. The Agreements are contracts or agreements.

69. The Underlying Lawsuits are Claims alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the actual or alleged breach of any contract or agreement.

70. Accordingly, the Contract Exclusion bars coverage under Insuring Clause A.3. for the Underlying Lawsuits as to any entities constituting Subsidiaries or Parent Companies of Mainline.

71. An actual, present, and justiciable controversy exists concerning coverage for the Underlying Lawsuits.

72. The entry of a declaratory judgment with respect to coverage regarding the Underlying Lawsuits, particularly as to application of the Contract Exclusion, is necessary and would be effective to resolve the controversy between the parties.

73. Accordingly, Scottsdale respectfully requests that the Court enter judgment declaring that no coverage is available to any entities constituting Subsidiaries or Parent Companies under the Policy for the Underlying Lawsuits.

\*       \*       \*

74. The filing of this Complaint is not intended to and does not constitute a waiver of any of Scottsdale's rights, remedies, and defenses under the Policy or at law. Additional conditions, limitations, and exclusions of the Policy may exclude or limit coverage for the

#30499308 v1

Underlying Lawsuits.

## PRAYER FOR RELIEF

**WHEREFORE**, Scottsdale prays that this Court enter an Order:

1. Declaring that the Regulatory Agency Exclusion bars coverage for the Underlying Lawsuits under the Policy and, as a result, Scottsdale has no duty to defend and/or indemnify Defendants under the Policy in connection with the Underlying Lawsuits;

2. Declaring that the Professional Services Exclusion bars coverage for the Underlying Lawsuits under the Policy and, as a result, Scottsdale has no duty to defend and/or indemnify Defendants under the Policy in connection with the Underlying Lawsuits;

3. Declaring that the Contract Exclusion bars coverage for the Underlying Lawsuits under the Policy as to any entities constituting Subsidiaries or Parent Companies under the Policy, and, as a result, Scottsdale has no duty to defend and/or indemnify any such entities under the Policy in connection with the Underlying Lawsuits;

4. Awarding Scottsdale its costs, expenses, and attorneys' fees together with pre- and post-judgment interest to the greatest extent allowed by law; and

5. Awarding Scottsdale all other relief that the Court deems just and equitable.

Dated: June 9, 2023.

**WATTERS WOLF BUB & HANSMANN, LLC**

/s/ *Russell F. Watters*
Russell F. Watters #25758MO
600 Kellwood Parkway, Suite 120
St. Louis, MO 63017
636-798-0573 (phone)
rwatters@wwbhlaw.com
*Attorneys for Plaintiff*

#30499308 v1